Walter B. Leake *v.* Gulf & Ship Island Railroad Company.

[46 South., 68.]

Railroads. *Passengers. Injuries. Collision. Peremptory instruction. Credibility of witness.*

> In a suit by a passenger for injuries suffered in a collision between a railroad train running at an unlawful speed and cars standing on a side track, caused by a misplaced switch, the defense of the railroad company being that the switch was misplaced by a miscreant, a peremptory instruction should not be given for defendant because the engineer of the colliding train testified that just as his engine came near the switch he saw an unknown man throw it and run away, there being evidence tending to discredit his statement.

From the circuit court of Lamar county.

Hon. William H. Cook, Judge.

Leake, appellant, was plaintiff in the court below, the railroad company, appellee, was defendant there. From a judgment in defendant's favor, predicated of a peremptory instruction, plaintiff appealed to the supreme court.

The suit was for damages claimed to have been suffered by plaintiff while a passenger on defendant's road, resulting from a collision between the train on which he was being carried and some cars on a side track.

The train on which plaintiff was a passenger was running in the corporate limits of the town of Lumberton at a greater rate of speed than six miles an hour; it turned from the main line and ran upon a side track and collided with some cars standing thereon, and came to a sudden stop; the collision caused plaintiff to fall in the car and suffer injuries. The defendant contended that some person, not an employe of the railroad company, was standing near the switch, and just before

the engine reached the place this person wrongfully turned the switch, so as to throw the train from the main line onto the side track; that although the engine and train were equipped with modern appliances, and the engineer used diligence in keeping a lookout, and in fact saw the miscreant turn the switch, and did all he could to stop the train, yet in spite of his efforts the collision resulted. Defendant further contended that the collision was a slight one, and would have resulted had the train been running only six miles per hour (the lawful rate), instead of at a greater rate, and that if it were negligence for defendant to run its train at a rate greater than six miles per hour within the corporate limits, yet the act of the third person in unlawfully turning the switch was the proximate cause of the injury.

Plaintiff contended that it was negligence on the part of defendant to run its train within the corporate limits of the town of Lumberton at a greater rate of speed than six miles per hour; that it was negligence on the part of the defendant to allow the switch in question to be and remain unlocked at the time of the accident; that the switch was not, in fact, turned at the time stated by the engineer; that he was not keeping a lookout, as was testified by him; that the switch was not turned by a miscreant; that, even admitting that the switch was turned by a miscreant, it did not follow as a matter of law that defendant was not liable, but its liability should be determined by a jury.

*J. C. Street,* and *Mounger & Mounger,* for appellant.

1. The jury should have said whether it was true or not true that a miscreant turned the switch. This was a question of fact alleged by the appellee and denied by the appellant.

2. If the jury had passed on this question and had found that the special plea was not sustained or that a miscreant did not turn the switch, then, and in such case, they could not have

escaped finding for the plaintiff on the undisputed facts in the record, and that would have ended the matter, but

3. If the jury had passed on the question and had found that a miscreant did turn the switch the matter would not have been settled, but it would have then been for the jury to decide whether, under the circumstances, this act of the miscreant could be said to have intervened in such way as to make appellant not liable.

Whether a miscreant did or did not turn the switch was a question for the jury.

The jury should have been permitted to pass upon the credibility of the witness McLendon. Considering the manner in which McLendon testified, the bias he manifested, and the way in which he contradicted himself, the jury would have been justified in believing and may have believed that he was wilfully swearing falsely, and they may have disregarded his testimony altogether.

McLendon said that his engine was within six or eight feet of the switch when it was turned. He made this statement deliberately and for a deliberate purpose. He held to it doggedly. He contradicted himself to support his statement.

The witness McLendon says that the train was running twelve miles an hour at the time the switch was turned, but there would not have been any difference, and the injury to the plaintiff would not have occurred just the same in case the train had been running only four or six miles an hour instead of twelve miles an hour.

The surroundings were such as to raise a question as to the witness' credibility, and, whenever this is the case, the jury should pass upon the question.

The credibility of a witness is entirely a question for the jury. A witness may be contradicted by circumstances as well as by statements of others contradictory to his own, and a jury is not bound to adopt his statements simply because no other witness denied them and he is not impeached. A

witness though unimpeached may have such interest in the question at issue as to effect his credibility, as where the testimony proceeds from a person, who would be guilty of a criminal fault unless he vindicated himself from the presumptions arising from the transaction, in which case the jury may disregard such testimony. *Wood v. Western Union Tel. Co.,* 45 N. Y., 549. See note at page 268–269 of 81 Am. Dec.

In this case the witness McLendon was under the necessity of vindicating himself from a fault; there was testimony which tended to contradict him in material points; the circumstances were such as to raise a question as to his credibility; he contradicted himself time after time; and his bias and his purpose to serve the defendant were manifest throughout his testimony; the question therefore should have been submitted to the jury.

In 85 Miss., at page 741, beginning with the second paragraph, the court in its opinion says: " There is a large and well defined class of cases in which for injuries to passengers the negligence of the carrier is implied from the mere happening of the accident. In such cases proof of injury to the passenger joined to proof of the accident makes out against the carrier a *prima facie* case of failure to observe that high degree of care required of it under the law, and, if not rebutted, entitles the plaintiff to recover. This rule applies when a passenger train strikes an animal on the track and a passenger is thereby injured, or when the injury results from a collision between two trains on the same track, and other simiar instances. And this is the law irrespective of statutory provision, and was the law prior to the adoption of the rules of evidence now embodied in § 1808, Code 1892.

We call the court to remember that the train, on which the appellant was riding, when he was injured, was running at a greater rate of speed than six miles an hour; that this was in the corporate limits of a municipality and in violation of law. This excessive speed was a condition without which the injury would not have occurred. This negligence con-

tributed actively and directly to the injury. Adopting the argument used in *Railroad Co.* v. *Crominarty,* 86 Miss., 469. Had not the excessive rate of speed been coupled with the failure to keep a lock on the switch, the accident might not have happened, because the stop would not have been so sudden; the collision would not have been so serious; that appellant would probably not have been thrown down. Under these circumstances the law places the burden of proof upon defendant railroad company, to show that the injury was not caused by reason of the train running over six miles an hour. *Jones* v. *Illinois, etc., R. R. Co.,* 72 Miss., 970; 23 South., 358.

In *Illinois, etc., R. R. Co.* v. *Watson,* 39 South., 69, it is said: " To an action for injuries to the person inflicted by a train running at an unlawful rate of speed within the limits of a municipality only two defenses are possible; the liability being absolute unless it appears that the unlawful rate of speed was not the proximate cause of the injury or that the person injured was himself guilty of negligence contributing proximately to the injury." It does not indubitably appear that the unlawful speed of the engine was not the proximate cause of the injury." Nor does it appear overwhelmingly and incontestable that young Watson was guilty of contributory negligence in being upon the main track at the time and under the circumstances shown."

*J. H. Neville, R. L. Dent* and *McWillie & Thompson,* for appellee.

The appellant is very much mistaken in supposing that as a matter of law the jury would have had the right to ignore the testimony of McLendon. Trials are to be determined on the evidence adduced, and juries have no right to consult merely their caprices and prejudices or to base their finding on conjectures or possibilities. Where they ignore the evidence their verdicts will be set aside, and a peremptory charge should always be given where the court would be obliged to grant a

new trial if the finding should be against the party asking such charge. *Fletcher* v. *Woodmen,* 81 Miss., 249; *Knights of Honor* v. *Fletcher,* 78 *Ib.,* 377; *Coleman* v. *Adair,* 75 *Ib.,* 662, 664; *Railroad Co.* v. *Smith,* 82 *Ib.,* 656; *Riley* v. *State,* 75 *Ib.,* 352; *Owen* v. *Railroad Co.,* 75 *Ib.,* 142; *Burnham* v. *Railroad Co.,* 81 *Ib.,* 46.

While it is undeniable that the rate of speed was unlawful and must be treated as constituting negligence, it is equally clear that it was not the proximate cause of the injury. The appellant contends that because the jar would be greater from the sudden stop or collision with other cars if the speed of the train exceeded the statutory limit that, therefore, the speed of the train constituted the proximate cause, and overlooks entirely the fact that the train would have passed smoothly on its southward course without the slightest jostle but' for the sudden and unexpected interference with the switch. He wholly ignores the difference between a condition and a cause expressed in the doctrine that " If the defendant's act or omission was not a cause of the injuries, but was only a condition upon which some new, independent, and unforeseen cause operated, the latter is the proximate cause of the injuries, and the defendant's negligence is too remote." 21 Am. & Eng. Ency. Law (2d ed.), 495.

This court recognizes the doctrine above referred to and in a case where a person was injured while recklessly crossing a track by a train which was at the time violating the statute as to speed in municipalities, said: " It is true the defendant was guilty of a violation of law in the rate of speed at which the train was run, but this was *causa sine qua non* while the *causa causans* was the imprudence of the person killed." It is of course immaterial in determining the question of proximate cause whether the intervening *causa causans* is the act of the person injured or that of a third person. *Crawley* v. *Railroad Co.,* 70 Miss., 340, 344; *Brookhaven Lumber Co.* v. *Railroad Co.,* 68 *Ib.,* 444.

In another case where defective appliances were shown at a point where an employe was injured by falling between two cars, but there was no showing as to whether or not his fall was the result of the defect in the appliances, this court said: "It is not enough that negligence of the employer and injury to the employe coexisted, but the injury must have been caused by the negligence; and the fact that injury to an employe occurred after the negligence is not sufficient to show the relation of cause and effect between them. *Post hoc ergo propter hoc* is not sound as evidence or argument. Nor is it sufficient for a plaintiff, seeking recovery for alleged negligence by an employer towards an employe to show a possibility that the injury complained of was caused by negligence. Possibilities will not sustain a verdict. It must have a better foundation. *Railroad Co.* v. *Cathey,* 70 Miss., 332, 337, 338.

If the mere conjectures and opinions of witnesses are not sufficient to forbid the granting of a peremptory instruction neither are those of jurors or counsel. *Burnham* v. *Railroad Co.,* 81 Miss., 46; *Owen* v. *Railroad Co.,* 77 *Ib.,* 142.

It was held in this state that the proximate cause of the injuries complained of, resulting from a box car being carried by a wind storm down an incline of a side track on which it was standing to the main line, the car having its brakes properly set but not blocked as required by the company, was that of a servant whose duty it was to block the car, and not the negligence of the company in having its track improperly constructed. *Railroad Company* v. *Wooley,* 77 Miss., 927.

Again, it has been held that the acts of the railway company in allowing a tank car containing cotton seed oil to escape from the train and run down a grade until it came upon an obstruction, breaking the tank and spilling the oil whence it flowed into an adjoining pasture, accumulated in low places and there remained for several days did not constitute the proximate cause of the death of the cows which drank the oil

in the pasture and died from its effects. *Railway Compcny* v. *Rooks,* 78 Miss., 91.

The decisions in other states accord with the foregoing. In a New York case it appeared that a driver of one of defendant's horse cars drove the horses so fast and so negligently that one of them fell and the car ran upon his hind quarters. The driver and others pushed back the car, thereby releasing the horse. As the horse's feet were freed he kicked violently and struck the plaintiff, a passenger upon the car, lawfully standing on its front platform. A judgment for the plaintiff was reversed, the court holding that the negligence of the driver in causing the horse to fall was not the proximate cause of the plaintiff's injuries. *Roedecker* v. *Metropolitan, etc., Co.,* 87 App. Div. (N. Y.), 227.

In a Massachusetts case the janitor of a building had negligently moved the stool of the elevator boy, who, not knowing of its removal lost his balance when he attempted to sit down, and to save himself from falling clutched at the elevator lever, thus starting the elevator and injuring a passenger. The court held that the act of the elevator boy in clutching the lever and not that of the janitor in moving the stool was the proximate cause of the injury. *Gibson* v. *International Trust Co.,* 17 Am. Neg. Rep., 248.

The supreme court of Kansas has expressed itself to the effect that where two distinct successive causes wholly unrelated in operation contribute towards the production of an accident resulting in injury and damage, one of such causes must be the proximate and the other the remote cause of the injury. A prior and remote cause cannot be made the basis of an action for the recovery of damages, if such remote cause do nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated and sufficient cause of the injury. *Railway Co.* v. *Columbia,* 69 Pac., 338.

Giving the fullest force to the appellant's contention, the unlawful speed of the train was merely the remote cause of the injury, the occasion or the existing condition brought about by the alleged negligence as to speed which rendered it possible for the independent act which intervened when the switch was thrown to result in injury.

We cite the following from the text of a work of high authority:

"Where the negligence of a third person is of an unusual and extraordinary character, interrupting the natural sequence of events, and the defendant's act or omission alone was not of a nature to produce the injuries, the defendant will not be liable. 21 Am. & Eng. Ency. L. (2d ed.), 492.

"Where an independent cause of a nature which could not have been anticipated and without which the injuries would not have occurred, has intervened between the defendant's negligence and the plaintiff's injuries, the defendant's negligence will, in general be held too remote to warrant a recovery against him." *Ib.,* 493.

It is entirely plain from the record that the act constituting the proximate cause was the work of a third person, but there being no evidence to show that the person who threw the switch was doing the company's work, it is quite immaterial whether it was the act of an intermeddler or of an employe of the company, for to throw a switch so as to divert a rapidly approaching passenger train into a side track occupied by a work train would be a crime which the company could not have anticipated and for the effects of which it would not have been responsible in either case.

WHITFIELD, C. J., delivered the opinion of the court.

It was manifest error on the part of the court below to give the peremptory instruction. The question as to whether any miscreant did misplace the switch, as well as the other questions involved should have been determined by the jury on the testi-

mony.   See, for the principle controlling the matter, the very accurate note to *Robertson* v. *Dodge*, 81 Am. Dec., at pages 268–270.

*Reversed and remanded.*